UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Norma Lee,  :  Case No. 1:06-cv-585
   :
    Plaintiff,  :
   :
vs.  :
   :
Javitch, Block & Rathbone, LLP,  :
et al.,  :
   :
    Defendants.  :

**ORDER**

Defendant has filed a motion for a new trial, to amend the judgment on the jury verdict, or for a remittitur. (Doc. 142) Plaintiff opposes the motion (Doc. 158), and Defendant has filed a lengthy reply brief. (Doc. 173) Many of the issues raised in this motion need no extended discussion. As listed by the subheadings in Defendant's Table of Contents (Doc. 142), these issues are:

(A) <u>Duplication of Damages</u>. The jury awarded damages under both the FDCPA and the OCSPA. Defendant argues they are duplicative. Plaintiff agrees that the "compensatory" damages are duplicative, but opposes any reduction. (See Doc. 158, p. 3 n. 2) The only "non-compensatory" damages awarded are the FDCPA statutory damages of $1,000. The other awards (of $43,000 in actual FDCPA damages, $603 in OCSPA economic losses, and $5,000 OSCPA non-economic losses) are all "compensatory." The total

-1-

compensatory damages that should be awarded to avoid duplicative recovery is $43,000, plus $1,000 in FDCPA statutory damages. Defendant's motion is granted to that extent.

(H) <u>Liability Based on Impermissible Inferences</u>. Defendant contends in this section that the jury's verdict "must have been" based upon impermissible inferences. The Court concludes Defendant's speculation about what the jury may have inferred about facts elicited at trial does not entitle it to a new trial. (For instance, Defendant suggests that the jury may have inferred that Defendant served Plaintiff at an incorrect address, and the verdict must be based on that improper inference. Since there is no dispute that the lawsuit summons and the garnishment affidavit did not contain Plaintiff's correct address, it is unclear why the jury would need to "infer" this, or why it was impermissible for the jury to consider this fact in reaching its verdict.) These arguments do not merit a new trial.

(I) <u>Actual Damages and improper closing argument</u>. Here, Defendant contends that there was no evidence to support Plaintiff's closing argument statement that Defendant files "tens of thousands" of garnishment affidavits yearly. Defendant also complains there was no evidence on the number of garnishments that actually affected exempt funds.

Plaintiff's counsel said during his closing argument that: "These people [JB&R] are filing 15,000, by my count, such

affidavits a year. Three hundred a week. They sign them and they're brought in, in batches, and they sign them on a rote basis. They sign them - Victor Javitch stated he may look and see the name's filled in or something like that, but he doesn't do anything more than that. He trusts his staff." (Doc. 169-2 at pp. 5-56 and 5-57.) No objection was made to this argument. Victor Javitch testified that he signed perhaps 30 affidavits when he was "on duty" at the firm to sign garnishments. Other firm witnesses testified that lawyers in the firm took turns being "on duty" to execute affidavits. Plaintiff's argument was not improper, fairly reflected the trial testimony, and certainly does not warrant a new trial.

(J) <u>Statutory Damages against manifest weight of the evidence</u>. Defendant argues that the jury's $1,000 award of FDCPA statutory damages is excessive and against the manifest weight of the trial evidence. Defendant contends that "if only" Plaintiff had answered her telephone, or responded to the collection lawsuit, the garnishment would not have happened, making any statutory award excessive. The jury concluded otherwise. Defendant's argument (essentially blaming Plaintiff for the situation) is unpersuasive.

(K) <u>Error in Admission of Medical Evidence</u>. The Court permitted Plaintiff to testify about her pre-existing conditions (diabetes and cancer). The Court denied Defendant's pre-trial in limine

motion on this subject, concluding that the testimony and evidence about these conditions would not be unduly prejudicial to Defendant. Plaintiff never asserted or suggested that these conditions were caused by Defendant's conduct. She testified that the reason she was receiving SSI was because her conditions did not permit her to work. She did testify that her blood sugar levels increased during the pendency of the garnishment; this issue is discussed below in more detail.

This defendant, as with any other defendant, must take a plaintiff as she is, and Plaintiff's health conditions were permissible background information about Plaintiff's general situation. Defendant extensively cross-examined Plaintiff about her allegations that the garnishment worsened some of her medical problems. The Court instructed the jury that their verdict could not be guided by or based upon sympathy for the Plaintiff. The Court concludes that this evidence did not result in a verdict based on passion or prejudice, and a new trial is not warranted.

(L) <u>Failure to Instruct Jury on OCSPA Claim Elements</u>. The Court instructed the jury to assume that the essential elements of an OCSPA claim – "consumer," "supplier," and "consumer transaction" – were satisfied, and that the statute applied to Plaintiff's claim. The Court found those issues to be questions of law, and determined that the Act applies to Plaintiff's claim. Defendant

-4-

contends these issues should have been submitted to the jury for their determination. The Court rejected this argument, and Defendant offers nothing new that persuades the Court its prior ruling was in error.

(M) <u>Failure to Instruct Jury on Immunity Defenses</u>. Defendant's arguments on various forms of immunity from FDCPA claims have been rejected by this Court. (See Docs. 29 and 113) See also, <u>Gionis v. Javitch, Block & Rathbone, LLP</u>, 238 Fed. Appx. 24 (6th Cir., June 6, 2007), rejecting immunity defense. The Court sees no reason to revisit the issue at this juncture, and these arguments do not merit the grant of a new trial.

(N) <u>Failure to Instruct Jury on "Least Sophisticated Consumer" Standard</u>. At the close of Plaintiff's case in chief, this Court observed that the "least sophisticated consumer" standard did not seem to "fit" the facts and allegations made in this case. (Doc. 166, Trial Trans. Day Two at pp. 43-47.) Plaintiff later submitted a proposed instruction on this topic. Defendant objected to the proposed instruction, because it was not necessary and it did not correctly state the entire standard. (Doc. 133, pp. 4-8) During the charge conference, Plaintiff's counsel stated that the Sixth Circuit has consistently applied the standard to all FDCPA claims, and that the instruction should therefore be given. The Court decided not to instruct the jury because the evaluation required under that standard did not fit

the facts at issue - that is, whether Victor Javitch had a "reasonable basis to believe" that Plaintiff may have had non-exempt funds at the time he signed the garnishment affidavit. The Court was concerned that the instruction would only confuse the jury.

Defendant is now objecting to the fact that the jury was not instructed on this issue, but that objection was not timely made. Defendant also argues that it was entitled to summary judgment because the least sophisticated consumer would not be misled or deceived by the Javitch affidavit. The Court previously denied summary judgment on this basis, and the Court finds the motion for a new trial on this argument is not well-taken.

(O) <u>Improper Instruction on Emotional Distress</u>. Defendant urged the Court to adopt the standard applicable to intentional infliction of emotional distress under Ohio law, and instruct the jury accordingly. The Court concluded this standard does not apply to FDCPA claims. This issue is addressed in the Court's companion order denying Defendant's Rule 50 motion, which is incorporated here. The Court concludes there was no error in instructing the jury.

(P) - (S) <u>Verdict Against Manifest Weight of the Evidence</u>.

These sections of Defendant's motion argue that each finding of the jury was not supported by the weight of the evidence, entitling Defendant to judgment or a new trial. The Court

disagrees.  There was ample evidence concerning the basis upon which Javitch executed the affidavit, and the firm's policies and procedures utilized to prepare the affidavit and initiate the non-wage garnishment.  The jury found that evidence established that Javitch did not have a "reasonable basis."  Credibility determinations are the jury's province, and this Court will not grant a new trial because Defendant believes its own witnesses were more credible than the Plaintiff.  Defendant's essential contention - its firmly-held belief that the firm's policies, procedures and training manuals are more than sufficient to establish the bona fide error defense and for a judgment in their favor - was rejected by the jury, and by this Court in ruling on summary judgment finding triable issues of fact.  There is no reason for this Court to reject the verdict, as the weight of the evidence clearly supports it.

(T)  "<u>Request for Instructions on R.C. 2716.11 Compliance</u>."  In this section of the motion, Defendant asks this Court to instruct it on how it might ensure its compliance with the Ohio garnishment affidavit statute in the future.  Perhaps this request is engendered by Defendant's obvious frustration at the jury's verdict.  Whatever the motivation may be, this Court has no duty or power to instruct Defendant on the contours of Ohio garnishment law.  These arguments are better directed to the Ohio Legislature (or perhaps to Congress with respect to the FDCPA).

They do not merit a new trial.

(U) <u>Judgment Based on FDCPA unconstitutionality</u>. Defendant asserted a claim that the FDCPA is unconstitutional as applied to its conduct. (Doc. 30) The United States filed a response (Doc. 44), and this Court rejected Defendant's contention. (Doc. 113) The Court adopts its prior order and rejects Defendant's unconstitutionality argument as a basis for a new trial or to amend the judgment.

(B) through (G) <u>Damages</u>.

These sections of Defendant's motion address the jury's award of actual damages to Plaintiff, an issue meriting further discussion.

There is no dispute that Plaintiff's bank remitted $493.22 to the Ohio municipal court on July 18, 2006, representing the entire balance of Plaintiff's two accounts. The funds were released by the court on August 9. During this time, several checks Plaintiff had previously written were returned for insufficient funds. Plaintiff's bank charged her various fees for the garnishment and overdraft/overbalance fees. She testified she had to borrow money from friends to cover some of the checks. Her interrogatory answers identified $567 of such damages. (Trial Exhibit S) At trial, Plaintiff testified that her bank eventually reversed some of the fees and costs it had assessed to her account. She clearly testified that the net

amount she actually had to pay, the amount she "lost" as a result of the garnishment, was $195.26.  (Doc. 165-3, pp. 1-120 & 1-121)

In addition to her out of pocket loss, Plaintiff testified that her actual damages included emotional distress and humiliation.  She testified that when she discovered that her funds had been garnished: "I was pretty angry because I didn't know what this company was, they had never contacted me, and for them to just go in and take this money without notifying me, I'm in a panic, I don't know what I'm going to do; you know, my bills have to be paid, I can't pay them, so I'm pretty upset about that, you know."  (Doc. 165-3, p. 1-109)  After she learned about the garnishment, she "went to the bank to see if I could stop them from constantly charging my bank account.  I mean, every day they was charging the same checks over and over.  They couldn't do that until I could give them the money back, which was something I couldn't do.  I didn't have no money to give them." (Id. at p. 1-110)[1]  She said dealing with her bank was embarrassing.  "I had never had anything like this happen before, so naturally I went in this bank, and you really don't want to have to deal with the people but I know I have to, so it's quite embarrassing, and without any money, and try to see if they can stop charging you for something you don't have."  (Id., p. 1-116)

---

[1] One bank statement shows entries on 7/18 and 7/19 of five separate overdraft charges of $34 each, a total of $170.  (Trial Exhibit W, p. 8)

She said she was irritable with her family during this time. Plaintiff testified that when she first contacted Defendant about the garnishment and told them her funds were SSI, she was told to get an attorney.  (Id., p. 1-115)

Plaintiff also testified that the stress of the situation caused her blood sugar levels to increase.  Those increased levels cause her great thirst, and she was drinking more fluids, resulting in a bladder infection leading to a yeast infection. She had to borrow money (three to five dollars) to buy some non-prescription cream to deal with that problem.

Plaintiff's bank statements confirm she was charged bank fees, but her testimony about her actual out of pocket loss was quite precise.  The Court credits her testimony about the distress she endured during this time, but also must note she had no witnesses or records to support her description of the adverse health effects she believes were the result of the garnishment.

Defendant introduced her medical records that reflected her glucose test results during the relevant period.  Plaintiff testified that her acceptable glucose level was 140 or below. According to her medical records, her tested levels were: 161 on January 6, 2006; 211 on February 7; 292 on April 4; 337 on May 5; 138 on July 5; 132 on August 4; and 126 on September 8.  (Trial Exhibit II)  She explained these results as fasting tests, which were lower than her own glucose checks done at home.  She did not

-10-

produce any records of her home checks, however.  Trial Exhibit EE, additional medical records, reflect two office visits on July 20 and August 24.  The July notes state her "BS to 167 has been trending down."  And on August 24, the note states "Pt's BS down to 100-160's."  Hence, none of the records reflect any increase in her glucose readings during the garnishment period.

Given this record, Defendant argues that the jury's damages verdict should be set aside in its entirety, or that the Court should order a remittitur.  This Court must permit the jury's damage award to stand unless it is (1) beyond the range supportable by the proof; (2) so clearly excessive that it "shocks the conscience" of the court; (3) is the result of passion, bias or prejudice; or (4) is clearly the result of a mistake.  See Gregory v. Shelby County, 220 F.3d 433, 443 (6th Cir. 2000).  "The trial court may not substitute its judgment or credibility determinations for those of the jury.  Moreover, it abuses its discretion in ordering either a remittitur or new trial when the amount of the verdict turns upon conflicting evidence and the credibility of witnesses." Farber v. Massillon Bd. Of Educ., 917 F.2d 1391, 1395 (6th Cir. 1990).

Defendant argues the award is not supported by the evidence, and/or was the result of bias or prejudice.  It suggests the $43,000 awarded for FDCPA actual damages bears no relationship to any evidence Plaintiff proffered.  Rather, Defendant points out

-11-

that it introduced evidence that the median income for Plaintiff's zip code, a fact Defendant determined during its pre-garnishment investigation, was $43,000.  Defendant therefore questions a damage award of this precise amount, which Defendant asserts must reflect a punitive, rather than compensatory, motivation.

Damages for emotional distress, humiliation, and pain and suffering are by definition incapable of precise quantification.  This Court is not surprised or shocked by the jury's verdict awarding such damages in this case.  The Court is also convinced that the verdict was not the result of the jury's bias or prejudice towards the Defendant.  However, given the evidence about Plaintiff's economic loss and blood sugar levels, the difficult question is whether the award is adequately supported in all evidentiary respects.

On this point, the Court must conclude that the jury lost its way in calculating damages.  Plaintiff testified on direct examination that her out of pocket loss was $195.26.  The economic damages verdict of $603 contradicts this testimony.  Plaintiff argues that her bank also "took" her August 2006 SSI check to satisfy bank charges, but this argument is contradicted by her own testimony and her bank statement's description of a "withdrawal" of that amount from her account on August 2.  Bank fees, charges, and garnished funds, are uniformly described in

her statements as "debit memos," overdraft charges, or fees. (See Trial Exhibit W)  The economic damages must be reduced from $603 to $195.26.

Her testimony about her elevated glucose levels is unsupported by any documentary evidence, and is actually contradicted by her own medical records.  While the Court does not doubt Plaintiff's description of adverse effects she endured from elevated glucose levels, the evidence fails to link those effects to the time span of the garnishment.  The records indicate that a period of higher levels preceded the summer of 2006.

This is not to suggest that this Court doubts the propriety of an award of non-economic emotional distress damages in this case.  The problem facing the Court is a lack of evidence to support one component of the award.  The Sixth Circuit approved a district court's examination of other cases involving similar facts to arrive at an appropriate remittitur, in Meyers v. Wal-Mart Stores, East, Inc., 257 F.3d 625, 634-635 (6th Cir. 2001). The Court has reviewed other FDCPA cases awarding damages that might involve comparative fact patterns.  The majority of such cases involve letters, validation notices, or other direct communications with debtors that do not result in any (or any appreciable) economic harm, but may cause some emotional upset (such as a letter stating the debtor may be liable for attorney's

fees). And the majority of FDCPA cases do not involve jury verdicts.

For example, in Baruch v. Healthcare Receivable Management, Inc., 2007 U.S. Dist. LEXIS 80429 (E.D.N.Y., October 30, 2007), cited by Defendant, plaintiff was repeatedly contacted by a debt collector who ignored his requests to stop contacting him, and ignored plaintiff's explanation that the medical provider told him he would not be charged for the bill in question. The conduct spanned almost two years, and involved numerous telephone calls and letters. The district court cited four other FDCPA cases, all involving harassing or improper telephone calls to debtors that spanned as short a time as one evening [$1,000 award, in Teng v. Metropolitan Retail Assoc., 851 F.Supp. 61 (E.D.N.Y. 1994)], to several months that included highly improper calls to plaintiff's workplace [$5,000 award, in Chiverton v. Fed. Fin. Group., Inc., 399 F.Supp.2d 96 (D. Conn. 2005)]. After reviewing these cases and others, the district court awarded $5,000. And in Boyce v. Attorney's Dispatch Serv., 1999 U.S. Dist. LEXIS 12970 (S.D. Ohio, April 27, 1999), involving several calls from a collector impersonating a police officer, and two or three letters threatening criminal action, all over a $225 debt, the district court awarded $6,000 to husband and $4,000 to wife in emotional distress damages, and describing the case as involving egregious statutory violations.

-14-

Yet, in Panahiasl v. Gurney, 2007 U.S. Dist. LEXIS 17269 (N.D. Cal., March 8, 2007), the district court awarded $50,000 to an FDCPA plaintiff for her emotional distress and humiliation, resulting from a series of harassing letters and telephone calls from a collector. This default judgment award was based solely on the plaintiff's affidavit describing her embarrassment, fear, anger, panic, humiliation, crying fits, difficulty eating and sleeping. Id. at *5. None of these cases involved any actual economic loss or a garnishment, and none involved a trial to a jury.

Cases arising under the Fair Credit Reporting Act, another consumer protection statute that permits recovery of emotional distress damages, are more numerous. The Fourth Circuit recently analyzed recent case law concerning FCRA verdicts, and noted that approved remittitur awards typically range between $20,000 and $75,000. See Sloane v. Equifax, 510 F.3d 495 (4th Cir. 2007). In Sloane, the Fourth Circuit ordered a $245,000 jury verdict remitted to $150,000, in a case involving an egregious failure to correct plaintiff's credit report after an identity theft. The Fourth Circuit also cited Bach v. First Union National Bank, 149 Fed. Appx. 354, 2005 U.S. App. LEXIS 18197 (6th Cir., August 22, 2005), affirming a jury award of $400,000 for emotional distress damages in an FCRA case.

Another case cited in Sloane is Boris v. Choicepoint

Services, Inc., 249 F.Supp.2d 851 (W.D. Ky. 2003), where the district court found a $197,000 jury verdict excessive, and reduced it to $100,000. In that case, plaintiff discovered an error on a type of credit report listing her prior insurance claims. The report stated she had made four, rather than two, prior claims, and the loss codes were incorrect. She contacted Choicepoint (the company that prepared and circulated the report to insurers), who said her own insurance company caused the problem. She then contacted the state insurance department, who instructed Choicepoint to work with her insurer to correct the report. A few months later, she confirmed that had been done. However, a few months after that, her insurance agent told her that her then-current Choicepoint report reflected nine prior claims, seven of which she never made. This resulted in her inability to get affordable insurance, increasing her rates and causing her great distress.

While her out of pocket losses were not large (the district court's opinion suggests they were approximately $200 in increased insurance costs), defendant published her erroneous insurance information for more than a year, until the data grew old enough that it was automatically deleted. Plaintiff requested damages for her emotional distress, and for injury to her business reputation. The jury awarded $197,000 in compensatory damages (and an additional amount of punitive

damages, which are recoverable under FCRA). The district court concluded that a remittitur of the compensatory award was appropriate, because of the conclusory evidence concerning any damage to her reputation. The court found emotional distress damages of $75,000 were well within the range of a verdict supported by the evidence. The court observed that even this amount may seem high, but noted that Choicepoint's trial strategy was essentially to blame the plaintiff: "Instead [of explaining the problem,] it chose to belittle her or blame her problems on a prior divorce." Id. at *23. The court found that the jury could properly consider this in arriving at a reasonable verdict. The district court also cited another FCRA jury verdict from the same district, where the court reduced plaintiff's compensatory damages from $2 million to $50,000, because "plaintiff offered no evidence beyond statements that she was stressed." Id.

Defendant cites one FDCPA case involving remittitur, Smith v. Law Offices of Mitchell N. Kay, 124 B.R. 182 (D. Del. 1991), which the Court finds clearly distinguishable. There, the debtors were in dire straights due to the husband's sudden disability and the wife's difficult pregnancy. They had filed a Chapter 7 bankruptcy petition in July, and were represented by counsel. About two months after filing their petition, they received a letter from the defendant demanding payment of a $206 debt. Plaintiffs told the defendant they had filed for

-17-

bankruptcy, and defendant apparently ceased communications. Plaintiffs had been represented in the recent past by at least three different attorneys, and had two other lawsuits pending. The $206 debt was a very small part of their overall debt situation, and the debt was discharged a short time after defendant's letter arrived. The jury awarded $15,000 in emotional distress damages, which the court found shocking and not rationally related to the evidence about defendant's letter. The court reduced the award to $3,000.

After careful review of the record and the case law, the Court finds that the award of $43,000 must be reduced by $8,600 (20%) to reflect the lack of evidence on the exacerbation of Plaintiff's diabetes. The Court concludes that this reduction will appropriately reflect the evidence and testimony in the record, while preserving the jury's determination that Plaintiff is entitled to a substantial award for emotional distress and humiliation. It must be remembered that Plaintiff was without her own funds from July 18 through August 9. That prospect undeniably would cause any reasonable person emotional distress, worry, and/or anger due to the necessity of repeatedly responding to automatically-imposed bank charges and fees. It must also be remembered that Plaintiff's actual loss, of $195.26, represented 32.38% of Plaintiff's total monthly income. For anyone, this would be a significant loss and a source of distress and worry;

for an individual living on a small fixed income, it may be far worse.

The Court therefore grants that portion of Defendant's motion seeking a remittitur.  The Court finds that the economic damages awarded by the jury ($603) should be reduced to $195.26, and the non-economic damages ($43,000) should be reduced to $34,400.00, for a total compensatory damages award of $35,595.26.  The remitted judgment will also include the jury's award of $1,000 in FDCPA statutory damages, leaving a total judgment of $36,595.26.  Plaintiff has the choice of accepting this remittitur, or proceeding to a new trial limited to the issue of compensatory damages.  Plaintiff shall inform this Court within 20 days of the date of entry of this Order of her decision.

For all of the foregoing reasons, Defendant's motion for a new trial and to amend the judgment is denied.  Defendant's motion for a remittitur is granted to the extent discussed above.

SO ORDERED.

Dated: April 25, 2008            s/Sandra S. Beckwith
                                 Sandra S. Beckwith, Chief Judge
                                 United States District Court